# EXHIBIT B

## CONFIDENTIAL AGREEMENT

This Confidential Agreement ("*Agreement*") is entered into effective as of June 27, 2014 (the "*Effective Date*") by and between DWIGHT BADGER ("*Badger*"), KEITH DAUBENSPECK ("*Daubenspeck*"), ADVANCED EQUITIES, INC. ("*AEI*") and ADVANCED EQUITIES FINANCIAL CORP. ("*AEFC*") (individually and collectively referred to as "*Plaintiffs*"), on behalf of themselves and all Releasing Persons (as defined below) on the one hand, and BLOOM ENERGY CORPORATION ("*Bloom*" or the "*Company*"), KLEINER PERKINS CAUFIELD & BYERS, LLC, KPCB HOLDINGS, INC., KPCB IX ASSOCIATES, LLC and KPCB X ASSOCIATES, LLC (collectively, "*KPCB*") and NEW ENTERPRISE ASSOCIATES 10, L.P., NEA VENTURES 2003, L.P., NEA MANAGEMENT COMPANY, LLC and NEW ENTERPRISE ASSOCIATES, LLC (collectively, "*NEA*") (individually and collectively referred to as "*Defendants*" and, together with Plaintiffs, as "*Parties*"), on behalf of themselves and all Released Persons (as defined below) on the other hand.

## RECITALS

**WHEREAS,** certain disputes have arisen between the Parties, including but not limited to disagreements relating to the Placement Agent Agreement dated March 3, 2009 between the Company, on the one hand, and AEI, on the other hand, which, among other things, confers certain rights upon Plaintiffs;

**WHEREAS,** AEI, Badger and Daubenspeck entered into an Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Section 15(b) of the Securities Exchange Act of 1934 and Sections 203(e) and 203(f) of the Investment Advisers Act of 1940, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order with the Securities and Exchange Commission, dated September 18, 2012, relating to certain alleged representations made by AEI, Badger and Daubenspeck concerning the Company, which were neither admitted nor denied;

**WHEREAS,** AEI, AEFC, Badger and Daubenspeck acknowledge (as set forth below) that the Company and other Released Persons (as defined below) did not make and were not responsible for any alleged misstatements or omissions to investors or potential investors in the Company at any time;

**WHEREAS,** AEI, AEFC, Badger and Daubenspeck wish to have an ownership interest in the Company based on their view, which is based entirely on their own analysis and opinions, that such ownership is in their best interests;

**WHEREAS,** Badger and Daubenspeck have been assigned any claims AEI and AEFC may have with respect to the Defendants and Released Persons;

**WHEREAS,** Plaintiffs wish to resolve any and all claims they may have or purport to have on behalf of the Releasing Persons (as defined below) against any and all Released Persons, whether relating in any way to the Company or otherwise;

**WHEREAS,** the Parties agree that resolving all such matters on a confidential basis, on the terms set forth below, is appropriate,

Bates #: Claimants' 0001

## AGREEMENT

**NOW, THEREFORE,** in consideration of the mutual terms, obligations, covenants, agreements, releases and conditions contained herein, receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree, effective as of the Effective Date, as follows:

1.     INCORPORATION OF RECITALS.  The above Recitals are incorporated here by reference.

2.     ACKNOWLEDGEMENT.  Plaintiffs acknowledge that the Company and all Released Persons have not made any misstatements or omissions of any kind, whether in connection with the sale of the Company's Preferred Stock (including the Company's Series F and Series G Preferred Stock), the sale of the Company's Common Stock or otherwise. Plaintiffs further acknowledge that any statements or representations made to investors in Plaintiff-Related Investment Vehicles that purchased the Company's Preferred or Common Stock, as well as any statements or representations made to any investors who were directly or indirectly introduced to the Company by any Plaintiff, are solely the responsibility of Plaintiffs and not of any of the Released Persons.  The foregoing shall not prohibit any Plaintiff from testifying truthfully in any manner or proceeding before any court or governmental or self-regulating organization.

3.     NO ADMISSION OF LIABILITY.  The Parties agree that they are entering into this Agreement solely to resolve disputed claims and to avoid the costs and burdens of litigation. Defendants dispute the merits of all claims asserted by Plaintiffs, and neither the fact of this Agreement nor anything contained herein shall be taken or construed as an admission of liability or a concession with respect to any matter in dispute.

4.     ADDITIONAL CONSIDERATION.  The Company agrees to pay Badger and Daubenspeck, on behalf of all Plaintiffs (and as designated by them), the following additional consideration for the releases described below:

a.     **Attorneys' Fees.**  The Company will reimburse Badger and Daubenspeck for attorneys' fees of $500,000 on the Effective Date.

b.     **Loan.**

i.     Issuance.  Subject to Badger and Daubenspeck executing a Secured Promissory Note in substantially the form attached here as Exhibit A (the "**Promissory Note**"), including a Security Agreement in the form attached as Exhibit 1 thereto executed by Badger and Daubenspeck (the "**Security Agreement**"), the Company will provide Badger and Daubenspeck with a loan of immediately available funds in the aggregate principal amount of $5,000,000.00 (the "**Loan**"), which shall be wired to the account designated on Exhibit E hereto on the Effective Date.  The Loan will have the terms set forth in Exhibit A.

ii.     Security Interests for Loan.  The Company and each of the Plaintiffs agree that the "Collateral" (as defined in the Security Agreement) shall serve as the sole security and collateral for the Loan.  The obligations with respect to the "Collateral" shall be documented in the Security Agreement and shall be subject to the terms thereof and of the Promissory Note and for so long as such Securities are Collateral, each stock certificate issued at

the Third Issuance, issued upon exercise of any of the Warrants (or issued upon conversion thereof), and issued in connection with adjustments with respect to such shares, shall be immediately delivered to the Company and held in escrow by the Company pursuant to the provisions of <u>Section 4</u> of the Securities Acquisition Agreement (as defined below).

    **c.**   <u>**Securities**</u>.

    **i.**   <u>Issuance of Securities</u>.   In accordance with, and subject to the execution of and compliance with, the terms, conditions, and provisions of that certain Securities Acquisition Agreement in the form attached here as <u>Exhibit B</u> (the "***Securities Acquisition Agreement***"), the Company will issue Badger and Daubenspeck an aggregate of up to 400,000 shares of the Company's Series G Preferred Stock (the "***Series G Shares***") at such times specified in, and subject to the escrow provisions set forth in, the Securities Acquisition Agreement.   All of the Series G Shares shall be subject to the Transfer Restrictions and the Indemnification Obligations (each as defined in the Securities Acquisition Agreement).   For the avoidance of any doubt, the Series G Shares described herein, including the Third Shares, are referred to in the Securities Acquisition Agreement collectively as the "Shares" and may be in the form of Common Stock as described in the Securities Acquisition Agreement, and are subject to adjustment as provided therein.

    **ii.**   <u>Agreement to Place Securities</u>.

    **a.**   The Company will use its good-faith efforts to find one or more purchasers (each, a "***Proposed Purchaser***") willing to consummate a purchase of all of the Initial Shares (as defined in the Securities Acquisition Agreement) for consideration within ninety (90) days following the Effective Date (the "***Initial Shares Proposed Purchase***").   The Company shall provide Badger and Daubenspeck with written notice of the Initial Shares Proposed Purchase (the "***Initial Shares Proposed Purchase Notice***") and Badger and Daubenspeck shall be required to accept the Initial Shares Proposed Purchase and promptly consummate the transaction provided for thereby provided that (1) it is for a purchase price per share equal to or greater than $22.91 per share (subject to adjustment for stock splits, combinations, and the like with respect to the Series G Shares occurring after the Effective Date), (2) the Initial Shares Proposed Purchase Notice is given within ninety (90) days following the Effective Date, (3) the Proposed Purchaser(s) is/are able to consummate the transaction before the earlier of (x) the date that is one hundred twenty (120) days following the Effective Date and (y) the consummation of an initial public offering by the Company pursuant to a registration that has been declared effective, and (4) the proposed transaction is to be effected pursuant to an agreement or instrument in customary form.   Subject to such transfer being compliant with the Law, the Company agrees to waive any prohibitions on transfer provided in the Securities Acquisition Agreement applicable to such purchase and sale.   If the Company is unable to find one or more Proposed Purchasers within the 90-day period or if the Initial Shares Proposed Purchase is not consummated, the Company shall no longer have any obligations under this Section 4(c)(ii)(a).

    **b.**   The Company will use its good-faith efforts to find one or more Proposed Purchasers willing to consummate a purchase of all of the Second Shares (as defined in the Securities Acquisition Agreement) within ninety (90) days following the Second Issuance (as defined in the Acquisition Agreement) (the "***Second Shares Proposed Purchase***"). The Company shall provide Badger and Daubenspeck with written notice of the Second Shares

3

Proposed Purchase (the "**Second Shares Proposed Purchase Notice**") and Badger and Daubenspeck shall be required to accept the Second Shares Proposed Purchase and promptly consummate the transaction provided for thereby provided that (1) it is for a purchase price per share equal to or greater than $22.91 per share (subject to adjustment for stock splits, combinations, and the like with respect to the Series G Shares occurring after the Effective Date), (2) the Second Shares Proposed Purchase Notice is given within ninety (90) days following the Second Issuance, (3) the Proposed Purchaser(s) is/are able to consummate the transaction before the earlier of (x) the date that is one hundred twenty (120) days following the Second Issuance and (y) the consummation of an initial public offering by the Company pursuant to a registration that has been declared effective, and (4) the proposed transaction is to be effected pursuant to an agreement or instrument in customary form.  Subject to such transfer being compliant with the Law, the Company agrees to waive any prohibitions on transfer provided in the Securities Acquisition Agreement applicable to such purchase and sale.  If the Company is unable to find one or more Proposed Purchasers within the 90-day period or if the Second Shares Proposed Purchase is not consummated, the Company shall no longer have any obligations under this Section 4(c)(ii)(b).

        **iii.**    <u>Acknowledgment Efforts May Not Be Successful</u>.  Plaintiffs agree, acknowledge, and confirm that the manner in which potential purchasers for the Initial Shares and Second Shares are approached and solicited, including information regarding the Company, if any, that is shared with any potential purchaser, shall be at the sole discretion of the Company.  Plaintiffs agree, acknowledge, and confirm that the Company may not be able to locate purchasers willing to pay any specified or minimum price for such Shares and that such failure shall not affect the validity or sufficiency of any of the consideration delivered to the Plaintiffs by the Company pursuant to this Agreement.

        **iv.**    <u>Following Placement Effort</u>.  If the Company is unable to find one or more purchasers willing to consummate a purchase of all of the Initial Shares or the Second Shares within the respective time periods specified in Section 4(c)(ii) above, Badger and Daubenspeck will have the right to offer the Initial Shares or the Second Shares, as the case may be, at any time after the respective time periods, for sale in a private placement to third parties who are "accredited investors" as defined by Rule 501 of Regulation D promulgated under the Securities Act of 1933, as amended, without the use of any "general solicitation or general advertising" within the meaning contemplated by Rule 502(c) of Regulation D, provided that any such sale shall comply with the Transfer Restrictions set forth in the Securities Acquisition Agreement and that such Shares are not subject to any pending claim for indemnification under Section 10 hereof.  In the case of a purchase of the Initial Shares or Second Shares effected pursuant to this subsection (iv), Plaintiffs agree, acknowledge, and confirm that the Company shall have no obligation to make any information about the Company available to any potential purchasers of such Shares.

        **d.**    **Warrants.**  In accordance with, and subject to the execution of and compliance with, the terms, conditions, and provisions of the Securities Acquisition Agreement, the Company will issue to Badger and Daubenspeck, on behalf of all Plaintiffs (and as designated by them), on the Effective Date, warrants in substantially the form of the warrant attached as Exhibit 2 to the Securities Acquisition Agreement exercisable for up to an aggregate of 400,000 shares of the Company's Series G Preferred Stock (the "**Series G Warrants**") and warrants in substantially the form of the warrant attached as Exhibit 3 to the Securities

Bates #: Claimants' 0004

Acquisition Agreement exercisable for up to an aggregate of 50,000 shares of the Company's Common Stock (the "**Common Warrants**" and, together with the Series G Warrants, the "**Warrants**"), with the Warrants to be subject to adjustment as provided therein.

      **e.**      <u>**Covenants and Understandings with Respect to Issuance of Securities**</u>. The Company will reserve a sufficient number of shares of the Company's capital stock to permit the issuance of the Securities. If the number of shares or securities that are authorized and unissued under the Company's Certificate of Incorporation shall not be sufficient to effect any issuance of the Company's capital stock permitted by the Securities Acquisition Agreement or any of the Warrants, the Company agrees to promptly take such corporate action as necessary to increase its authorized but unissued shares or other securities to be sufficient for such purpose.

      **f.**      <u>**Tax Liability.**</u>  Plaintiffs have reviewed with each Plaintiff's own legal and tax advisors the federal, state, local, and any other applicable tax consequences associated with the transactions contemplated by this Agreement, including, but not limited, to receipt of the Loan, Series G Shares, Warrants and the Securities issued upon exercise of the Warrants and upon the times specified herein and the relevant agreements referenced herein. Plaintiffs have relied solely on such advisors and have not received any advice from the Company or any of its agents regarding the legal and tax consequences associated with Plaintiffs entering into this Agreement or the consummation of the transactions contemplated hereby. Plaintiffs understand that Plaintiffs (and not the Company) shall be responsible for each Plaintiff's respective own tax liability that may arise as a result of the transactions contemplated by this Agreement with this understanding.

    **5.**    <u>RELEASES</u>.

      **a.**      <u>**Definitions.**</u>

        **i.**     "**Releasing Persons**" shall mean each Plaintiff, all Plaintiff-Related Investment Vehicles, and all past or present directors, officers, members, managers, investors, stockholders, partners, representatives, agents, attorneys, accountants, advisors, consultants, principals, employees, trustees, trustors, beneficiaries, joint venturers, insurers, reinsurers, parents, subsidiaries, affiliates, predecessors, liquidators, successors, assigns, heirs, estates and/or other related person of any Plaintiff or Plaintiff-Related Investment Vehicle.

        **ii.**     "**Released Persons**" shall mean each Defendant, any and all direct and indirect, past and present Defendant-Related Investment Vehicles, any and all direct and indirect, past and present Portfolio Companies of KPCB or NEA, and any and all past or present directors, officers, managers, members, investors, stockholders, partners, representatives, agents, attorneys, accountants, advisors, consultants, principals, employees, trustees, trustors, beneficiaries, joint venturers, insurers, reinsurers, parents, subsidiaries, affiliates, predecessors, liquidators, successors, assigns, heirs, estates and/or other related person of any Defendant, any Defendant-Related Investment Vehicle or of any Portfolio Company of KPCB or NEA.

        **iii.**     "**Released Claims**" shall mean any and all actions, causes of action, suits, obligations, proceedings, charges, complaints, debts, agreements, promises, liabilities, claims, demands, damages, indemnities, contributions, or causes of any kind, whether foreseen or unforeseen, suspected or unsuspected, known or unknown, fixed or contingent, equitable or at law, that any Releasing Person has or has ever had against any Released Person.

Notwithstanding the foregoing, the Released Claims do not include any claim for breach of any obligation under this Agreement, the Promissory Note, the Security Agreement, the Securities Acquisition Agreement or the Warrants.

        **iv.** "***Portfolio Company***" shall mean any past or present company for which KPCB or NEA has or had, directly or indirectly, any right to appoint or nominate a director to such company's board of directors; any past or present company for which KPCB or NEA has or had, directly or indirectly, any board observation right; and any other company, past or present, in which KPCB or NEA or any Defendant-Related Investment Vehicle has or had, directly or indirectly, any past or present investment.

        **v.** "***Plaintiff-Related Investment Vehicle***" shall mean (i) any and all past and present limited partnerships, limited liability companies, corporations or other investment vehicles that have directly or indirectly invested in, or that have directly or indirectly served as general partner or have otherwise provided investment or other management services to any investment vehicle that has invested in, the Company or any other Portfolio Company of KPCB or NEA, and (ii) that were organized, managed or created by, related to or affiliated in any way with any Plaintiff, including but not limited to, the investment vehicles, entities, and persons identified in <u>Exhibit C</u> attached hereto.

        **vi.** "***Defendant-Related Investment Vehicle***" shall mean (i) any and all past and present limited partnerships, limited liability companies, corporations or other investment vehicles that have directly or indirectly invested in, or that have directly or indirectly served as general partner or otherwise provided investment or other management services to any investment vehicle that has directly or indirectly invested in, the Company or any other Portfolio Company of KPCB or NEA, and (ii) that were organized, managed or created by, related to or affiliated in any way with any Defendant or any of their present or former general partners, managing members, officers, directors, employees or agents, including but not limited to, the investment vehicles, entities, and persons identified in <u>Exhibit D</u> attached hereto.

        **b.**   **<u>Plaintiffs' Releases</u>.**  Plaintiffs, on behalf of themselves and all Releasing Parties, hereby release and forever discharge each of the Defendants and each Released Person from any and all Released Claims.  This release applies to any and all claims in contract, tort, or otherwise, any and all claims under any statute or common law, and any and all claims in law or in equity.

        **c.**   **<u>Defendants' Releases</u>.**  Provided that Plaintiffs comply in all respects with the terms of this Agreement and the agreements and transactions contemplated by this Agreement, KPCB, NEA and the Company (on behalf of itself and its officers and directors), waive and relinquish any claim they may have to recover attorneys' fees, expenses or costs incurred in connection with the October 23, 2013 letter setting forth certain alleged claims on behalf of Badger, and later supplemented to include alleged claims on behalf of all Plaintiffs, through the date of this Agreement.

        **d.**   **<u>Known and Unknown Claims</u>.**  The releases in this Agreement extend to Released Claims that Plaintiffs do not know or suspect to exist in their favor, which, if known by them, would have materially affected their decision to enter into this Agreement.  Plaintiffs acknowledge that they are familiar with Section 1542 of the California Civil Code, which provides as follows:

6

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiffs expressly waive and relinquish any right or benefit which they have or may have under Section 1542 of the California Civil Code and under any other statute or legal principle with similar effect.

In connection with such waiver and relinquishment, Plaintiffs have been advised by their counsel, and Plaintiffs acknowledge that they are aware that, after executing this Agreement, they or their attorneys or agents may discover Released Claims or facts in addition to, or different from, those which they now know or believe to exist with respect to the subject matter of this Agreement, but that it is Plaintiffs' intention hereby to fully, finally, and forever settle and release all of the Released Claims, whether known or unknown, suspected or unsuspected, which now exist, may exist, or heretofore may have existed.  Further to this intent, the releases herein given shall be, and remain in effect as, full and complete releases notwithstanding the discovery or existence of any additional or different claim or fact.

6.    NO INFORMATION OR BOARD OBSERVER RIGHTS.  Plaintiffs will not have, and hereby relinquish, any information or similar rights, as well as any board observer rights, and shall not exercise any rights to obtain records or other information relating to the Company under Section 220 of the Delaware General Corporation Law or any similar statute, rule or regulation.  In addition to the foregoing, and effective immediately, any agreements between (a) the Company and (b) either (x) any of the Plaintiffs or (y) any of the Plaintiffs and any of the Releasing Parties, including but not limited to (i) that certain AEI Investor Rights Agreement, dated March 7, 2006 (as amended), by and between the Company, "AEI" (as defined therein), and the "AEI Investors" defined therein, (ii) that certain AEI Investor Rights Agreement, dated March 3, 2009 (as amended), by and between the Company, "AEI" (as defined therein), and the "AEI Investors" defined therein, (iii) that certain letter agreement regarding "Board Observation Rights", dated March 7, 2006 (as amended), by and between the Company and AEI, (iv) that certain letter agreement, dated June 14, 2012 (as amended), by and between the Company and AEI, and (v) any and all similar agreements, arrangements, understandings, whether in writing or otherwise ((i) through (v) being collectively referred to as the "*AEI Side Letters*"), are hereby terminated and extinguished as to the Plaintiffs in their entirety.  Plaintiffs represent, warrant and agree that they have not directly or indirectly sold, assigned or otherwise transferred any information or similar rights, or any board observer rights, including any that, without limitation, are the subject matter of, or relate in any way to, the AEI Side Letters.  Plaintiffs further represent that they have no economic, voting, equity, or other interests in any of the other Releasing Persons.  Notwithstanding the foregoing, any terms of the AEI Side Letters requiring the parties thereto (other than the Company) to maintain and to cause any observers, officers, directors, partners, employees or agents to maintain, the confidentiality of any proprietary information of the Company obtained by it and/or any such observer or representatives shall expressly survive the termination of such AEI Side Letters.

7.    MUTUAL REPRESENTATIONS AND WARRANTIES. Each of the Parties represents, warrants and agrees as follows:

     **a.**     Such Party has the full power and authority to execute, deliver and perform this Agreement, including, without limitation, to provide the releases set forth above (subject to Section 10 below) on behalf of itself and, to the extent such Party has the authority, the other Releasing Persons, and the individual signing this Agreement has been duly authorized to do so on behalf of each such Party;

     **b.**     Such Party is validly organized, in good standing and existing under the laws of the place of its formation, and is duly authorized to enter into the legal commitments contained in this Agreement;

     **c.**     Except as otherwise provided in the Sale and Assignment Agreement dated December 3, 2013 between Badger, Daubenspeck, AEI and AEFC, such Party has not sold, assigned, or otherwise transferred any interest in the claims, demands, actions, causes of action, or rights that are the subject matter of this Agreement or with respect to any Released Claim hereunder;

     **d.**     Such Party represents that it has not commenced any legal action or proceeding against any other Party in any court of law or other forum with respect to the subject matter of this Agreement or with respect to any Released Claim hereunder;

     **e.**     Such Party has read this Agreement and its Exhibits and fully understands the terms hereof and thereof; and

     **f.**     Such Party is executing this Agreement wholly upon its own volition, individual judgment, belief and knowledge, upon the advice of its counsel, and this Agreement is made without reliance upon any statement or representation of any other Party, except those representations and warranties expressed in this Agreement.

    **8.**    <u>CONFIDENTIALITY</u>.

     **a.**     The Parties agree that the existence and terms of this Agreement (and the transactions and agreements referred to herein) are confidential.  The Parties further agree to not disclose the contents or terms of the Agreement (and the transactions and agreements referred to herein) to any person or entity other than:

     **i.**     the management and members of the board of their respective organizations, if applicable, <u>provided</u> that such persons agree to maintain the confidentiality of such information in accordance herewith;

     **ii.**     their attorneys, accountants, consultants, and other professionals to the extent necessary to obtain their services in connection with the matters contemplated by this Agreement, <u>provided</u> that such persons agree to maintain the confidentiality of such information in accordance herewith; and

     **iii.**     as may be required by any court, regulatory authority, pursuant to a subpoena or other request for disclosure.  If either party receives any compulsory request to disclose information covered under this provision, that party shall promptly notify the other parties of this Agreement in advance of such disclosure, and reasonably cooperate with the non-requesting party to the extent permitted by law.  If the non-disclosing party objects to the

Bates #: Claimants' 0008

disclosure, and wishes to contest disclosure, or limit the nature or extent of disclosure, the non-disclosing party shall bear any costs and expenses (including legal fees) associated with any objections to disclosure, including any motions to quash or motions for protective orders.  The disclosing party shall not be in breach of this provision if it is prohibited by any regulatory authority or otherwise by law from giving notice of the request to the non-disclosing party.

      **b.**     The Company may also, if it deems it necessary to do so, disclose the existence and terms of this Agreement (and the transactions and agreements referred to herein) in connection with the Company's financial statements or other financial reports and its dissemination of the foregoing, any prospective financing or acquisition of the Company, any prospective public offering of the Company's securities, or the reporting obligations of a publicly-traded company.

      **c.**     Plaintiffs further agree that, from the execution of this Agreement, Plaintiffs and the Releasing Persons shall not discuss or make any written or oral statements concerning the Company or any other Released Parties without obtaining prior consent from the Company or such Released Parties, as applicable.  Notwithstanding the foregoing, Badger and Daubenspeck may make statements about the Company without receiving prior consent from Bloom only under the following circumstances:

      **i.**     Badger and Daubenspeck may mention the Company as is reasonably necessary as part of a formal employment application process (e.g. excluding networking) to obtain employment in the financial services industry (including the insurance, brokerage, and banking industries).  In such circumstances, Badger and Daubenspeck shall not make any written or oral statements concerning the Company other than the following:  "Advanced Equities, [Badger or Daubenspeck's] former employer, served as a Placement Agent for Bloom Energy Corporation's issuance of Series D, E, and F stock.  Advanced Equities raised approximately $200 million as Placement Agent.  Advanced Equities' engagement with Bloom is covered by a confidentiality agreement, and I cannot say anything further about the engagement."

      **ii.**     Badger and Daubenspeck may identify the Company during the course of any effort by them to negotiate a private sale of the Shares or the Securities issuable upon exercise of the Warrants.  Badger and Daubenspeck shall not state anything in the course of such effort other than a description of the particular securities they own that are being offered for sale and the price or terms at which the particular securities are offered and the terms of the Settlement Agreements which apply to transfers of the Shares or the Securities.

      **iii.**     For clarity, neither of the foregoing exceptions shall allow Badger or Daubenspeck to disclose any information (A) that they learned as board observers or placement agents, or pursuant to any information rights or due diligence processes, of the Company or any Released Person, (B) that there was a dispute between Plaintiffs and any of the Released Persons, or (C) that the Plaintiffs entered into a settlement agreement with the Defendants all of which shall be maintained in strict confidence by Badger and Daubenspeck, subject to the exceptions set forth in clauses (a)(ii) and (a)(iii) above.

    **9.**    <u>NON-DISPARAGEMENT</u>.  Without limiting the generality of the foregoing, Plaintiffs agree that they will not disparage any Released Persons or their products, services, vendors, affiliates, successors or assigns, or any person acting by, through, under or in concert

with any of them known to the Plaintiffs as Released Persons, and the Company agrees that it will not disparage any Plaintiff with any written or oral statement under any circumstances.

    **10.**    <u>INDEMNIFICATION.</u>

    **a.**    <u>Indemnification</u>.

        **i.**    Subject to the limitations set forth in this Section 10, from and after the Effective Date, each Plaintiff shall severally and jointly indemnify and hold harmless all Released Persons from and against any and all losses, claims, damages, liabilities and expenses (including all legal or other expenses reasonably incurred by a Released Person), directly or indirectly, whether or not due to a Third-Party Claim (collectively, "***Indemnifiable Damages***"), arising out of, resulting from or in connection with any claim by any (A) Plaintiff-Related Investment Vehicle,  (B) investor, member, or successor in interest, transferee or assignee of any Plaintiff or any Plaintiff-Related Investment Vehicle, (C) any direct or indirect investor in the Company who was solicited or introduced to the Company by any Plaintiff or any representative of any Plaintiff or any of its affiliates, (D) any party otherwise affiliated with any Plaintiff or with whom Plaintiffs have shared information concerning the Company or the matters resolved hereby or any aspect thereof, or (E) any party that directly or indirectly receives information as a result of the breach by any Plaintiff of his or its confidentiality obligations set forth or referred to herein, which claim arises out of, results from, or is related to (w) the purchase, sale, or transfer of securities of the Company to or by any of the foregoing parties (but excluding any purchase from the Company after the date hereof), (x) the decision of any of the foregoing parties to hold or sell securities of the Company, (y) the status of any of the foregoing parties as a security holder of the Company or relationship as such to the Company (including without limitation any claims for breach of fiduciary duty, breach of contract, or otherwise), or (z) the breach by any Plaintiff of his or its confidentiality obligations set forth or referred to herein.  No claim for indemnification may be asserted after the tenth anniversary of the Effective Date.

        **ii.**    <u>Control of Third-Party Claims by Company</u>.  In the event the Company becomes aware of a claim by a third party (a "***Third-Party Claim***") that the Company in good faith believes may result in a claim for indemnification hereunder by the Company, the Company shall have the right in its sole discretion to conduct the defense of and to settle or resolve such Third-Party Claim (and the costs and expenses incurred by the Company in connection with such defense, settlement or resolution (including reasonable attorneys' fees, other professionals' and experts' fees and court or arbitration costs) shall be included in and constitute Indemnifiable Damages subject to indemnification under this Section 10 regardless of whether it is ultimately determined that such Third-Party Claim arose out of, resulted from or was in connection with a matter listed in Section 10(a)(i) above.  The Company shall have the right in its sole discretion to determine and conduct the defense of any Third-Party Claim and the settlement, adjustment or compromise of such Third-Party Claim.  Following the settlement, adjustment, or compromise of such Third-Party Claim, the Company shall be entitled to cancel a number of Securities, or receive cash from the Plaintiffs in the amount of any Indemnifiable Damages (including reasonable attorneys' fees, other professionals' and experts' fees and court or arbitration costs relating to the Third-Party Claim), in accordance with the provisions of Section 10(b)(iii) hereof. Unless otherwise consented to in writing in advance by the Company in its sole discretion, the Plaintiffs may not participate in any Third-Party Claim or any action related to such Third-Party Claim (including any discussions or negotiations in connection with the settlement, adjustment or compromise thereof) or receive any information in connection therewith.

    **b.**    <u>Indemnification Security & Claims</u>.

    **i.**    <u>Claims Made By the Company</u>.  Each Plaintiff agrees, acknowledges, and confirms that the Securities issuable pursuant to the Securities Acquisition Agreement and the Warrants, and any Securities issuable upon exercise, conversion, or adjustment thereof, shall constitute partial security for the benefit of the Company (and, if approved by the Company, the other Released Parties) with respect to any Indemnifiable Damages.  Recovery against the Securities shall constitute the Company's (and, if so approved, the other Released Persons') primary, but not the sole and exclusive, remedy for the Plaintiffs' indemnity obligations to the Released Persons.  In the event of a claim for indemnification hereunder, the Plaintiffs agree, acknowledge and confirm that the Company (and, if approved by the Company, the other Released Persons) shall be entitled to recover against any of the Securities in whatever priority the Company deems appropriate in its sole discretion.  In the event the Company (and, if applicable, the other Released Persons) has exhausted or made claims upon all of the Securities and any claims remain outstanding or are made following such time, the Released Persons shall have direct recourse against the Plaintiffs, on a joint and several liability basis for any Indemnifiable Damages for which the Securities were not sufficient to indemnify the Company (and, if applicable, the other Released Persons) hereunder.  Upon sale of any Security as permitted under the terms of the Settlement Agreements, the security interest in such Security created hereby shall cease to attach to such Security.

    **ii.**    <u>Satisfaction of Claims</u>.  In the event a Released Person (a "***Claiming Released Person***") has incurred, paid, reserved or accrued, or in good faith believes that it may incur, pay, reserve or accrue, Indemnifiable Damages (including, in the case of the Company, in connection with a Third-Party Claim), then:

    **1.**    In the event a Claiming Released Person is not the Company (a "***Non-Company Released Person***") a Non-Company Released Person, the Plaintiffs shall, no later than 5 days after written notice from the Claiming Released Person, pay the Claiming Released Person an amount of cash (by check or wire of immediately available funds to an account designated by the Claiming Released Person) equal to the amount of any Indemnifiable Damages claimed by such Claiming Released Person.

    **2.**    In the event a Claiming Released Person is the Company, the Company shall cancel a number of Securities having a total value equal to the amount of any Indemnifiable Damages claimed by the Company (or in the event Securities have not yet been issued, shall be relieved of its obligation to issue further Securities equal to such amount).  The Company shall provide written notice to the Plaintiffs of the Company's cancellation of any of the Securities in satisfaction of any Indemnifiable Damages.  In the event the Securities are insufficient to indemnify the Company for the Indemnifiable Damages, the Plaintiffs shall, no later than 5 days after written notice from the Company, pay the Company an amount of cash (by check or wire of immediately available funds to an account designated by the Company) equal to the amount of any remaining Indemnifiable Damages not satisfied by cancellation of the applicable Securities.

    **3.**    For purposes of this Section 10, the per share value of any Securities cancelled in accordance with this Agreement shall be determined by the Company's Board of Directors in good faith and valued at the time such claim for Indemnifiable Damages is made; <u>provided</u>, <u>however</u>, that where there exists a public market for such Securities at the time

of a claim hereunder, the fair market value per share value of such Securities shall be the average of the closing bid and asked prices of such Securities quoted in the Over-The-Counter Market Summary or the average of the high and low prices as reported by The Nasdaq National Market, the Nasdaq Small Cap Market or on any exchange on which such Securities are listed, whichever is applicable, for the five (5) trading days prior to the date the claim for Indemnifiable Damages is made.

           **iii.**    <u>Arbitration of Disputes</u>.  If the Plaintiffs dispute the amounts of Indemnifiable Damages claimed by a Claiming Released Person pursuant to the terms hereof, the Plaintiffs may bring an arbitration in accordance with the terms of Section 19 hereof to resolve the matter.  The decision of the arbitrator as to the validity and amount of any claim shall be non-appealable, binding and conclusive upon the parties hereto, and the Claiming Released Person and the Plaintiffs shall be entitled to act in accordance with such decision.  The non-prevailing party to an arbitration shall pay its own fees and expenses and the fees and expenses of the prevailing party, including attorneys' fees and costs, reasonably incurred in connection with such suit in accordance with Section 19 hereof.

           **iv.**    <u>Treatment of Securities</u>.  Except to the extent there is a cancellation of the Shares in connection with Indemnifiable Damages, the Shares held by the Plaintiffs shall be treated by the Company as issued and outstanding stock of the Company, and the holders thereof shall be entitled to exercise voting rights and to receive dividends with respect to such shares (with any stock dividends becoming part of the Securities).  The Plaintiffs shall not receive interest or other earnings on the Securities (other than as set forth in the immediately preceding sentence).  Until the Warrants are exercised, the Shares subject to the Warrants shall not be entitled to exercise voting rights.  None of the Securities nor any beneficial interest therein may be pledged, subjected to any encumbrance, sold, assigned or transferred by any Plaintiff or be taken or reached by any legal or equitable process in satisfaction of any debt or other liability of any Plaintiff, with the "Collateral" (as defined in the Security Agreement) being an acknowledged sole exception to the foregoing.

      11.    <u>ATTORNEYS' FEES AND COSTS</u>.  The Parties acknowledge and agree that, except as expressly provided in Sections 4(a), 10 and 19, each Party shall bear its own costs, expenses and attorneys' fees incurred in connection with resolving the Released Claims, including (but not limited to) those relating to the negotiation, drafting, and execution of this Agreement.

      12.    <u>NO CONSTRUCTION AGAINST DRAFTER</u>.  For purposes of any action arising out of the application, interpretation or alleged breach of this Agreement, each of the Parties waives any statutory or common law principle, and any judicial interpretation of this Agreement, which would create a presumption against any Party as a result of such Party having drafted any provision of this Agreement.  Counsel for the respective Parties have reviewed and revised this Agreement, and there shall not be applied any rule construing ambiguities against the drafting party.

      13.    <u>NOTICES</u>. Any and all notices required or permitted to be given to a party pursuant to the provisions of this Agreement will be in writing and will be effective and deemed to provide such party sufficient notice under this Agreement on the earliest of the following: (a) at the time of personal delivery, if delivery is in person; (b) one (1) business day after deposit with an express overnight courier for United States deliveries, or two (2) business days after such

Bates #: Claimants' 0012

deposit for deliveries outside of the United States; or (c) three (3) business days after deposit in the United States mail by certified mail (return receipt requested) for United States deliveries. All notices for delivery outside the United States will be sent by express courier.  All notices not delivered personally will be sent with postage and/or other charges prepaid and properly addressed to the party to be notified at the address set forth below the signature lines of this Agreement or at such other address as such other party may designate by one of the indicated means of notice herein to the other party hereto.  A "business day" shall be a day, other than Saturday or Sunday, when the banks in the city of San Francisco are open for business.

14.    <u>FURTHER DOCUMENTS</u>.  To the extent any documents are required to be executed to effectuate this Agreement, upon reasonable request each of the Parties agrees to execute and deliver such other and further documents as may be reasonably required to carry out the terms of this Agreement.

15.    <u>NO WAIVER</u>.  A Party's waiver of any provision of this Agreement must be in writing signed by the waiving party, and shall not be deemed a waiver of any other provision.

16.    <u>ENTIRE AGREEMENT</u>.  This Agreement, the Promissory Note, the Security Agreement, the Securities Acquisition Agreement and the Warrants (the "***Settlement Agreements***") contain the entire understanding and complete agreement of the Parties with respect to the subject matter of the Settlement Agreements, and all understandings and agreements previously reached among the Parties, if any, are merged into the Settlement Agreements.  No amendment or modification of this Agreement shall be valid or binding upon the Parties unless made in writing and executed by all Parties.

17.    <u>SEVERABILITY</u>.  If any provision of this Agreement is determined by any court or arbitrator of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such provision will be enforced to the maximum extent possible given the intent of the parties hereto. If such clause or provision cannot be so enforced, such provision shall be stricken from this Agreement and the remainder shall be enforced as if such invalid, illegal or unenforceable clause or provision had (to the extent not enforceable) never been contained in such agreement.

18.    <u>AGREEMENT BINDING</u>.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective partners, shareholders, members, affiliates, subsidiaries, officers, directors, employees, agents, successors, heirs and assigns.  The Company may assign any of its rights and obligations under this Agreement without the consent of any of the Plaintiffs.  None of the Plaintiffs may assign, whether voluntarily or by operation of law, any of its rights and obligations under this Agreement, unless the Company provides prior written consent.  The estate of Badger or Daubenspeck, as applicable, shall be required to assume the obligations of Badger or Daubenspeck, respectively, under the Settlement Agreements. Notwithstanding the third sentence of this paragraph, Badger and Daubenspeck may transfer the Securities to their respective heirs provided that such heirs assume all of the obligations of Badger or Daubenspeck, as applicable, that are set forth in the Settlement Agreements.

19.    <u>ARBITRATION AND ENFORCEMENT OF AGREEMENT</u>.  Nothing in this Agreement will be construed so as to impair any legal or equitable right of any of the Parties to enforce any of the terms of this Agreement.  The Parties agree that any dispute or controversy of any kind between the Parties, whether arising out of, relating to or concerning any interpretation, construction, performance or breach of this Agreement, or any dispute of any kind, shall be

13

settled by confidential arbitration to be held in Santa Clara, California in accordance with the commercial dispute rules then in effect of the American Arbitration Association.  The Arbitrator may grant injunctions or other relief in such dispute or controversy.  Judgment may be entered on the arbitrator's decision in any court having jurisdiction.  The Plaintiffs and the Defendants shall each be responsible for one half of the costs and expenses of such arbitration, and each shall separately pay its counsel fees and expenses; provided, however, in the event of a determination by the Arbitrator which is adverse to the Plaintiffs or the Defendants, as the case may be, the non-prevailing Parties shall be responsible for all of the costs and expenses of such arbitration, and for all of the counsel fees and expenses of all Parties relating thereto.

20.    <u>GOVERNING LAW</u>.  The validity, interpretation, performance, and enforcement of this Agreement, as well as any other rights, obligations or liabilities otherwise related to the subject matter of this Agreement, shall be governed by the laws of the State of California (without regard to its conflicts of law principles).

21.    <u>COUNTERPARTS</u>.  This Agreement may be executed in any number of counterparts, each of which shall constitute an original and all of which together shall constitute one and the same instrument.  Execution of a copy shall have the same force and effect as execution of an original.

**[Signature Page Follows]**

    **IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date last written below.


    [ADDRESSES TO BE ADDED TO EACH SIGNATURE BLOCK]



DATED: _____, 2014     _____

                                                     DWIGHT BADGER
                                                     1392 W Old Mill Road
                                                     Lake Forest IL 60045



DATED: _____, 2014     _____

                                                     KEITH DAUBENSPECK
                                                     1807 N Fremont
                                                     Chicago,        Illinois        60614



DATED: _____, 2014     ADVANCED EQUITIES, INC.


                                                     By: _____

                                                     Name: _____

                                                     Title: _____



DATED: _____, 2014     ADVANCED EQUITIES FINANCIAL CORP.


                                                     By: _____

                                                     Name: _____

                                                     Title: _____

DATED: _____, 2014 BLOOM ENERGY CORPORATION

By: _____

Name: _____

Title: _____

DATED: _____, 2014 KLEINER PERKINS CAUFIELD & BYERS, LLC

By: _____

Name: _____

Title: _____

DATED: _____, 2014 KPCB HOLDINGS, INC.

By: _____

Name: _____

Title: _____

DATED: _____, 2014 KPCB IX ASSOCIATES, LLC

By: _____

Name: _____

Title: _____

DATED: _____, 2014          KPCB X ASSOCIATES, LLC

By: _____

Name: _____

Title: _____


DATED: _____, 2014          NEW ENTERPRISE ASSOCIATES 10, L.P.

By: _____

Name: _____

Title: _____


DATED: _____, 2014          NEA VENTURES 2003, L.P.

By: _____

Name: _____

Title: _____


DATED: _____, 2014          NEA MANAGEMENT COMPANY, LLC

By: _____

Name: _____

Title: _____


DATED: _____, 2014          NEW ENTERPRISE ASSOCIATES, LLC

By: _____

Name: _____

Title: _____

## EXHIBIT A

**Form of Promissory Note**

## **EXHIBIT B**

**Form of Securities Acquisition Agreement**

## <u>EXHIBIT C</u>

### Plaintiff-Related Investment Vehicles

Advanced Equities Financial Corp
Advanced Equities GreenTech Investments I, LLC
Advanced Equities GreenTech Investments III, LLC
Advanced Equities GreenTech Investments III-2, LLC
Advanced Equities GreenTech Investments IV, LLC
Advanced Equities, Inc.
Advanced Equities Financial Corp.
AEI 2006 Venture Investments I, LLC
AEI 2006 Venture Investments II, LLC
AEI 2010 CleanTech Ventures I, LLC
AEI 2010 CleanTech Ventures I-2, LLC
AEI 2010 CleanTech Ventures II, LLC
AEI Bloom Secondary, LLC
AEI Bloom Secondary II, LLC
AEI Bloom X, LLC
AEI CleanTech Ventures I, LLC
AEI CleanTech Ventures II, LLC
AEI GreenTech Investments III, LLC
AEI GreenTech Investments IV, LLC
AEI GreenTech Investments V, LLC
AEI GreenTech Investments VII, LLC
AEI Project X, LLC
AEI Trilogy Fund I, LLC
Apex Investment Fund V, L.P.
Apex Investment Fund VI, L.P.

***

## EXHIBIT D

### Defendant-Related Investment Vehicles

New Enterprise Associates, Inc. (f.k.a. "NEA Development Corp.")
New Enterprise Associates, LLC
NEA Management Company, LLC
NEA Partners IV, L.P.
NEA Partners VI, L.P.
NEA Partners VII, L.P.
NEA Partners VIII, L.P.
NEA Partners 9, L.P.
NEA Partners 10, L.P.
NEA Partners 11, L.P.
NEA Partners 12, L.P.
NEA Partners 13, L.P.
NEA Partners 14, L.P.
NEA 12 GP, LLC
NEA 13 GP, LTD
NEA 14 GP, Ltd.
Scott Sandell
New Enterprise Associates IV, L.P.
New Enterprise Associates VI, L.P.
New Enterprise Associates VII, L.P.
New Enterprise Associates VIII, L.P.
New Enterprise Associates 8A, L.P.
New Enterprise Associates 9, L.P.
New Enterprise Associates 10, L.P.
New Enterprise Associates 11, L.P.
New Enterprise Associates 12, L.P.
New Enterprise Associates 13, L.P.
New Enterprise Associates 14, L.P.
NEA 11 GP, LLC
NEA 12 GP, LLC
NEA 13 GP, Ltd.
NEA 14 GP, Ltd.
NEA 11 MOP, Ltd.
NEA 14 Manager Fund, L.P.
Growth Equity Opportunities Fund, LLC
Growth Equity Opportunities Fund II, LLC
Growth Equity Opportunities Fund III, LLC
Presidents' Fund II, L.P.
Presidents' Fund III, L.P.
NEA Presidents' Fund, L.P.
NEA General Partners, L.P.
New Enterprise Associates (Beijing), LLC
New Enterprise Associates (Beijing), Ltd.

New Enterprise Associates (India), LLC
New Enterprise Associates (India), Pvt. Ltd.
NEA FVCI, LLC
NEA FVCI, Ltd
NEA FVCI II, Ltd
NEA FDI, Ltd
NEA FDI II Ltd.
NEA FII, Ltd.
Catalyst Ventures, L.P.
NEA Ventures 1995, L.P.
NEA Ventures 1996, L.P.
NEA Ventures 1997, L.P.
NEA Ventures 1998, L.P.
NEA Ventures 1999, L.P.
NEA Ventures 2000, L.P.
NEA Ventures 2001, L.P.
NEA Ventures 2002, LP
NEA Ventures 2003, LP
NEA Ventures 2004, LP
NEA Ventures 2005, LP
NEA Ventures 2006, L.P.
NEA Ventures 2007, L.P.
NEA Ventures 2008, L.P.
NEA Ventures 2009, L.P.
NEA Ventures 2010, L.P.
NEA Ventures 2011, L.P.
NEA Ventures 2012, L.P.
NEA Ventures 2013, L.P.
NEA Ventures 2014, L.P.
nea:seed, LLC
nea:seed II, LLC
NEA Spectra Partners, L.P.
NEA Investment Partners, L.P.
NEA Onset Partners II, L.P.
NEA Onset Partners III, L.P.
NEA-ViXS International Holding SRL
NEA-ViXS Acquisition SRL
Proper Vision Limited
All Noble Investments Limited
Running River Limited
All Record Limited
Hugon Investments Limited
Roundway Holdings Limited
Vision Step International Limited
NEA 13 SM, LLC
NEA 13 Innovation, Ltd.
Innovation HealthNow Blocker LLC
NEA 13 Exploramed Ltd.

Cybernaut Incubation Company
NEA Onset Partners, L.P.
NEA Chemicals & Materials Partners, L.P.
NR Investments 2012 LLC
NR Investments I
NR Investments II
Kleiner Perkins Caufield & Byers, LLC
KPCB Holdings, Inc.
KPCB IX Associates, LLC
Kleiner Perkins Caufield & Byers IX-A, L.P.
Kleiner Perkins Caufield & Byers IX-B, L.P.
KPCB X Associates, LLC
Kleiner Perkins Caufield & Byers X-A, L.P.
Kleiner Perkins Caufield & Byers X-B, L.P.
KPCB XI Associates, LLC
Kleiner Perkins Caufield & Byers XI-A, L.P.
Kleiner Perkins Caufield & Byers XI-B, L.P.
KPCB XII Associates, LLC
Kleiner Perkins Caufield & Byers XII, LLC KPCB XII Founders Fund, LLC
KPCB XIII Associates, LLC
Kleiner Perkins Caufield & Byers XIII, LLC
KPCB GGF Associates, LLC
KPCB Green Growth Fund, LLC
KPCB Management, LLC
KPCB PBD Associates, LLC
KPCB Pandemic and Bio Defense Fund, LLC
KPCB PBD Founders Fund, LLC

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date last written below.


DATED:   June _____, 2014

**BLOOM ENERGY CORPORATION**

By: _____

Name: William H. Kurtz

Title:  Chief Financial Officer, Chief
        Commercial Officer, and Secretary

Address: 1299 Orleans Drive
         Sunnyvale, CA 94304


[SIGNATURE PAGE TO CONFIDENTIAL AGREEMENT]

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date last written below.

DATED: _____, 2014     KLEINER PERKINS CAUFIELD & BYERS, LLC

By: _____

Name: JOHN DOERR

Title: MANAGING MEMBER

Address: 2750 Sand Hill Road

Menlo Park, CA 94025

DATED: _____, 2014     KPCB HOLDINGS, INC.

By: _____

Name: JOHN DOERR

Title: EXECUTIVE V.P.

Address: 2750 Sand Hill Road

Menlo Park, CA 94025

DATED: _____, 2014     KPCB IX ASSOCIATES, LLC

By: _____

Name: JOHN DOERR

Title: MANAGER

Address: 2750 Sand Hill Road

Menlo Park, CA 94025

[SIGNATURE PAGE TO CONFIDENTIAL AGREEMENT]

KPCB X ASSOCIATES, LLC

DATED: _____, 2014

By: _____

Name:  JOHN DOERR

Title:  MANAGER

Address: 2750 Sand Hill Road

          Menlo Park, CA  94025

[SIGNATURE PAGE TO CONFIDENTIAL AGREEMENT]

Bates #: Claimants' 0026

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date last written below.

DATED: _____, 2014          NEW ENTERPRISE ASSOCIATES 10, L.P.

By: _Louis A. Cit_

Name: __Louis S. Citron__

Title: __Chief Legal Officer__

Address: __1954 Greenspring Drive, Suite 600__

__Timonium, MD 21093__

DATED: _____, 2014          NEA VENTURES 2003, L.P.

By: _Louis A. Cit_

Name: __Louis S. Citron__

Title: __Vice President__

Address: __1954 Greenspring Drive, Suite 600__

__Timonium, MD 21093__

[SIGNATURE PAGE TO CONFIDENTIAL AGREEMENT]

Bates #: Claimants' 0027

DATED: _____, 2014          NEA MANAGEMENT COMPANY, LLC


By: _____
Name: _Louis S. Citron_____
Title: _Secretary_____
Address: _1954 Greenspring Drive, Suite 600_
_Timonium, MD  21093_


DATED: _____, 2014          NEW ENTERPRISE ASSOCIATES, LLC


By: _____
Name: _Louis S. Citron_____
Title: _Secretary_____
Address: _1954 Greenspring Drive, Suite 600_
_Timonium, MD  21093_


[SIGNATURE PAGE TO CONFIDENTIAL AGREEMENT]

Bates #: Claimants' 0028