UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BLOOM ENERGY CORPORATION,

Petitioner,

v.

DWIGHT BADGER, et al.,

Respondents.

Case No.  21-cv-02154-PJH

**ORDER DENYING COUNTER MOTION FOR VACATUR OF FINAL AWARD, GRANTING PETITION TO CONFIRM THAT AWARD, AND DENYING REQUESTS TO SEAL**

Re: Dkt. No. 1, 2, 19, 29, 29-3, 30, 34

Before the court is petitioner Bloom Energy Corporation's ("petitioner") petition to confirm arbitration award (the "petition") and for entry of judgment.  Dkt. 1.  Also before the court is respondents' counter motion for vacatur of the subject arbitration award (the "counter motion").  Dkt. 19; Dkt. 29-3.  Further before the court are petitioner's requests to seal various documents filed in support of the petition and counter motion.  Dkt. 2 (motion to seal the arbitration award); Dkt. 34 (declaration filed in support of respondents' administrative motion to seal (Dkt. 29) supplemental response filings).

The matter is fully briefed and suitable for decision without oral argument.  Having read the parties' papers and considered their arguments and the relevant legal authority, the court **DENIES** the counter motion, **GRANTS** the petition, and **DENIES** the requests to seal.

## BACKGROUND

Petitioner is a company that provides electricity.  Dkt. 1 ¶ 1.  Advanced Equities, Inc. ("AEI") was an investment advisory firm.  Id. ¶ 2.  AEI was the parent company of Advanced Equities Financial Corp., Inc. ("AEFC").  Id.  Respondents Dwight Badger ("Badger") and Keith Daubenspeck ("Daubenspeck") (collectively, "respondents") were,

1   respectively, an officer and director of AEFC.  Id.

2   In March 2009, petitioner engaged AEI to raise money for petitioner.  Id. ¶ 6.

3   Respondents led AEI in that effort.  Id.  When raising that money, respondents

4   purportedly made misrepresentations concerning petitioner's business.  Compare id. with

5   Dkt. 19 ¶ 6.  The Securities and Exchange Commission ("SEC") caught wind and initiated

6   an investigation.  Dkt. 1 ¶ 6.   In 2012, the SEC issued an order sanctioning respondents.

7   Id.  The SEC did not take any action against petitioner.  Id.  The relationship between

8   petitioner and respondents soured.  Id. ¶ 7. The parties disputed responsibility for the

9   misrepresentations.  Id.

10   In 2014, the parties were thought to have settled that fight.  Id.  Two writings reflect

11   that settlement, namely the Confidential Agreement ("CA") (Dkt. 1-3) and the Securities

12   Acquisition Agreement ("SAA") (Dkt. 1-4) (collectively, the "settlement agreements").  Id.

13   Those agreements include provisions requiring the parties to arbitrate any future dispute

14   between them (without qualification) before the American Arbitration Association ("AAA")

15   in Santa Clara, California. Dkt. 1 ¶ 7.  Those provisions are materially similar.  Id. ¶ 8.

16   Neither party disputes the validity of either provision.

17   Fast-forward a few years.  On July 20, 2018, respondents initiated an arbitration

18   proceeding against petitioner. Dkt. 1 ¶ 9.  That proceeding is marked AAA "case no. 01-

19   18-0002-7891." Id. at 1.  In that proceeding, respondents allege that they were

20   fraudulently induced into signing the CA and SAA.  Id.  On May 2019, the AAA appointed

21   a three-member arbitration panel (the "panel") to the proceeding.  Id. ¶ 10.  In relevant

22   part, the panel included a Loyola Law School professor, Hiro Aragaki ("Aragaki").  Id.

23   On March 16, 2021, the panel issued the subject arbitration award (the "Final

24   Award").  Id. ¶ 11; Dkt. 2-4 (sealed version of Final Award).  In it, the panel (1) dismissed

25   respondents' claims with prejudice and (2) ordered respondents to pay petitioner

26   $966,760.31 in attorneys' fees and costs pursuant to the settlement agreements' fee-

27   shifting conditions. Dkt. 1 ¶ 11; Dkt. 2-4 at 28.

28   On March 17, 2021, petitioner served respondents with a copy of the Final Award.

United States District Court
Northern District of California

2

1   Id. ¶ 11 n.2.  On March 26, 2021, petitioner filed the instant petition asking the court to

2   confirm the Final Award under the Federal Arbitration Act, Title 9 U.S.C. § 9.  Id. ¶¶ 12-

3   15.  Petitioner requests that the court enter judgment in conformity with that award.  Id. ¶¶

4   16-17.  Petitioner further requests pre- and post-judgment interest on the $966,760.31

5   awarded in attorney's fees and costs.  Id. ¶ 18.

6        On June 9, 2021, respondents filed a 13-page response (the "initial response") to

7   the petition.  Dkt. 19.[1]  In their initial response, respondents argue that the court should

8   deny the petition, vacate the Final Award, and direct the AAA to continue the arbitration

9   with a new panel.  Id. at 1-2.  Respondents failed to file any evidence in support of their

10  initial response.

11       On July 15, 2021, the court held a case management conference in this action.

12  Dkt. 27.  At that conference, counsel for respondents, Andrew Munro ("Counsel Munro"),

13  requested an opportunity to supplement the initial response.  Dkt. 28.  Counsel Munro

14  indicated that such supplement would serve as a viable substitute for some unspecified

15  "counter petition" that respondents suggested (in their initial response) they intended to

16  later file.  Dkt. 28.  The court permitted respondents to file a supplemental brief with

17  accompanying evidence and, correspondingly, petitioner to file a reply to that brief.  Id.

18       On July 23, 2021, respondents filed their supplemental brief (the "supplemental

19  response").  Dkt. 29-3.  In it, they re-characterize paragraph 13 of their initial response

20  (and only that paragraph) as a "counter motion" for vacatur.  Id. at 4.  They further state

21  that they file their supplemental response both in opposition to the petition and in support

22  of their counter motion.  Id.  On July 30, 2021, petitioner filed its reply to the supplemental

23  response (the "supplemental reply").

24       In this order, the court will construe respondents' responses as both an opposition

25  to the petition and an independent counter motion to vacate the Final Award.  Given that

26

27  [1] Respondents refiled their initial response on July 12, 2021.  Compare Dkt. 19 (dated
    June 3, 2021) with Dkt. 25 (dated July 12, 2021).  At the case management conference,
28  the court ordered that duplicative filing stricken.  Dkt. 27.  Given that, the court will refer to
    only docket 19 when discussing the initial response.

United States District Court
Northern District of California

1   respondents rely on identical arguments in support of both their opposition and counter

2   motion, the court will simultaneously address the counter motion and petition.  The court

3   will detail additional facts and procedural events concerning the arbitration as necessary

4   below.

**DISCUSSION**

I.      **Counter Motion to Vacate and Petition to Confirm Arbitration Award**

        A.      **Legal Standard**

        Title 9 U.S.C. § 9 provides that a party to an arbitration may apply for an order

confirming an arbitration award within one year after such award is made.  9 U.S.C. § 9.

If the parties' arbitration agreement does not specify a court in which to file that

application, then the applying party may file it in the district court within which such award

was made.  Id.

        When presented with an application to confirm an arbitration award, the district

court "must grant an order unless the award is vacated, modified, or corrected."  Id.

"There is nothing malleable about 'must grant,' which unequivocally tells courts to grant

confirmation in all cases, except when one of the 'prescribed' exceptions applies."  Hall

St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 587 (2008).

        The Ninth Circuit has explained that "judicial review of an arbitrator's decision is

both limited and highly deferential."  Barnes v. Logan, 122 F.3d 820, 821 (9th Cir. 1997).

As succinctly put by another court in this district, "grounds for vacating an award are

limited to those specified by statute."  Int'l Petroleum Prod. & Additives Co., Inc. v. Black

Gold, S.A.R.L., 418 F. Supp. 3d 481, 487 (N.D. Cal. 2019).  "Neither erroneous legal

conclusions nor unsubstantiated factual findings justify federal court review of an arbitral

award."  Bosack v. Soward, 586 F.3d 1096, 1102 (9th Cir. 2009).  Rather, "[t]he

confirmation of an arbitration award is meant to be a summary proceeding."  Int'l

Petroleum Prod. & Additives Co., Inc., 418 F. Supp. 3d at 487.

        Pursuant to Title 9 U.S.C. § 10, a district court may vacate an award only if one of

the following four conditions are present:

United States District Court
Northern District of California

1    (1) The award was procured by corruption, fraud, or undue means.

2    (2) There was evident partiality or corruption in any of the arbitrators.

3    (3) The arbitrators were guilty of misconduct in refusing either to postpone the

4        hearing or to hear evidence pertinent and material to the controversy, as well

5        as any other misbehavior by which the rights of any party have been

6        prejudiced.

7    (4) The arbitrators exceeded their powers, or so imperfectly executed them that a

8        mutual, final, and definite award upon the subject matter was not made.

9        9 U.S.C. § 10(a)(1)-(4).

10   The Ninth Circuit has explained that this section's "limited grounds are designed to

11   preserve due process but not to permit unnecessary public intrusion into private

12   arbitration procedures." U.S. Life Ins. Co. v. Superior Nat. Ins. Co., 591 F.3d 1167, 1173

13   (9th Cir. 2010).  Finally, "[t]he burden of establishing grounds for vacating an arbitration

14   award is on the party seeking it."  Id.

15   **B.    Analysis**

16   In their filings, respondents primarily assert that the court should vacate the Final

17   Award under Title 9 U.S.C. § 10(a)(2).  To a lesser extent, the parties add that vacatur is

18   proper under § 10(a)(3) and § 10(a)(1).  The court analyzes each argument in turn.

19   **1.    Aragaki Did not Act with Evident Partiality or Corruption**

20   To show "evident partiality" within the meaning of Title 9 U.S.C. § 10(a)(2), a

21   litigant challenging an arbitration award must either (1) "establish specific facts indicating

22   actual bias toward or against a party" or (2) "show that [the arbitrator] failed to disclose . .

23   . information that creates 'a reasonable impression of bias.'"  Lagstein v. Certain

24   Underwriters at Lloyd's, London, 607 F.3d 634, 645-46 (9th Cir. 2010).

25   In their responses, respondents do not articulate whether vacatur is proper on

26   grounds of actual bias, a reasonable impression of bias, or both.  Respondents cite four

27   cases as the "governing authorities in this matter."  Dkt. 19 ¶ 13 (11:1-6); Dkt. 29-3 at 17.

28   Those four cases comprise the following: (1) Commonwealth Coatings v. Continental

5

United States District Court
Northern District of California

1   Cas., 393 U.S. 145 (1968); (2) In re Sussex Court, 776 F.3d 1092, 1099 (9th Cir. 2015);

2   (3) Schmitz v. Zilveti, 20 F.3d 1043, 1046 (9th Cir. 1994); and (4) New Regency Prods.,

3   Inc. v. Nippon Herald Films, Inc., 501 F.3d 1101 (9th Cir. 2007).

4        All four of these cases describe only the reasonable impression of bias standard.

5   As a formal matter,  then, the court understands that respondents limit their challenge

6   under Title 9 U.S.C. § 10(a)(2)  to its reasonable impression of bias condition.

7        But respondents also suggest that vacatur is proper under that section's actual

8   bias condition.  They accuse Aragaki of abusing his authority to skew the arbitration in

9   favor of petitioner.  Dkt. 19 ¶ 13 (11:25-12:1);  Dkt. 29-3 at 5.  Respondents do not,

10  however, cite any authorities addressing the actual bias condition.

11       Regardless, the court will analyze respondents' Title 9 U.S.C. § 10(a)(2) challenge

12  under both its reasonable impression of bias and actual bias conditions.

13                    a.       Reasonable Impression of Bias

14       The Supreme Court has held that a federal court may vacate an arbitration award

15  when an arbitrator fails to "disclose to the parties any dealings that might create an

16  impression of possible bias."  Commonwealth Coatings Corp., 393 U.S. at 149.  In the

17  Ninth Circuit, "long past, attenuated, or insubstantial connections" between a party and

18  the arbitrator do not give rise to a reasonable impression of partiality.  In re Sussex, 781

19  F.3d 1065, 1074 (9th Cir. 2015).  An arbitrator is also not required to disclose matters that

20  are only of "some interest" to a party.  Lagstein, 607 F.3d at 646.

21       An arbitrator is, however, "required to disclose only facts indicating that [the

22  arbitrator] might reasonably be thought biased *against one litigant and favorable to*

23  *another.*"  Id. (italics in the original).  Such facts extend to those showing "direct financial

24  connections between a party and an arbitrator or its law firm, or a concrete possibility of

25  such connections."  In re Sussex, 781 F.3d at 1074.

26       When a party challenges an award based on an arbitrator's purported interest in a

27  third-party entity with some connection to another litigant, the Ninth Circuit has

28  acknowledged that the challenging litigant must show the following two conditions to

United States District Court
Northern District of California

1    justify vacatur: (1) that the arbitrator's undisclosed interest in a third-party entity is

2    substantial; and (2) that the third-party entity's business dealings with the litigant are

3    nontrivial. Monster Energy Co. v. City Beverages, LLC, 940 F.3d 1130, 1136 (9th Cir.

4    2019), cert. denied, 141 S. Ct. 164 (2020).  The Ninth Circuit recently confirmed the

5    viability of this requirement. EHM Prods., Inc. v. Starline Tours of Hollywood, Inc., 1

6    F.4th 1164, 1172 (9th Cir. 2021) ("We decline to stretch the Monster Energy opinion to

7    require disclosure of nontrivial business dealings with counsel.").

8            The holding in Monster Energy Co. is instructive here.  In that case, the court

9    considered a vacatur request premised on a JAMS arbitrator's failure to disclose to the

10   litigants that he had a shareholder interest in that organization. Id. at 1132.  The court

11   found that interest "substantial." Id. at 1136.  The court also determined that JAMS'

12   relationship with petitioner-Monster Energy was "non-trivial" because petitioner's "form

13   contracts contain[ed] an arbitration provision that designates [JAMS] as its arbitrator,"

14   resulting in JAMS having "administered 97 arbitrations" for petitioner over the prior five

15   years. Id.  Based on these findings, the Ninth Circuit held that the arbitrator's interest in

16   JAMS "creates an impression of bias" that he "should have [] disclosed." Id.

17           In this case, respondents base their reasonable impression of bias argument on

18   Aragaki's failure to disclose his affiliation with a nonprofit organization focused on

19   advancing alternative dispute resolutions throughout the world (namely, the Foundation

20   for Sustainable Rule of Law Initiatives ("FSRI")) prior to his appointment as an arbitrator.

21   Dkt. 19 at 1-2, ¶ 13 (6:15-24); Dkt. 29-3 at 17.  That affiliation linked Aragaki to petitioner

22   by way of petitioner's outside counsel, Fenwick and West LLP ("Fenwick"). Dkt. 19 ¶ 13

23   (6:25-7:5).  According to respondents, that link matters because FSRI receives money

24   from Fenwick. Id. ¶ 13 (6:24-7:5); Dkt. 29-3 at 10-11.  Respondents say that, "had [they]

25   known these facts, they would never have allowed Aragaki to serve on the panel." Dkt.

26   19 ¶ 13 (7:2-5); Dkt. 29-3 at 5-6.

27           The court concludes that respondents fail to show a reasonable impression of bias

28   by Aragaki.  Various reasons support this conclusion.

As an initial matter, a party waives its right to seek vacatur of an arbitration award when it "has constructive knowledge of a potential conflict but fails to timely object." Fid. Fed. Bank, FSB v. Durga Ma Corp., 386 F.3d 1306, 1313 (9th Cir. 2004). In this case, AAA appointed Aragaki to the panel in May 2019. Dkt. 21-1 ¶ 5. Respondents did not object to Aragaki's appointment until November 21, 2019. Id. ¶ 8. Petitioner presented evidence showing that a simple Google search of the terms "Hiro Aragaki Fenwick" immediately shows his affiliation with FSRI. Dkt. 33-1 ¶¶ 2-5.

Respondents say in their supplemental response that they "spent between 15 [and] 20 hours scouring the internet" to find connections between candidates for the panel and either petitioner or Fenwick. Dkt. 29-3 at 7. To support that purported fact, respondents cite "Munro Aff. ¶ 17; Ex. 2." Id.

The court reviewed the evidence proffered by respondents in this action. That evidence is consolidated at docket 29. That docket does not include a "Munro affidavit." While Counsel Munro does include two declarations at docket 29, *neither* declaration includes a paragraph 17. See Dkt. 29-1 (three paragraph declaration regarding respondents' administrative motion to seal); Dkt. 29-5 (16 paragraph declaration in support of supplemental response).

Respondents' citation to "Ex. 2" also does not account for that shortcoming. Based on the "list of exhibits" attached to the supplemental response, Dkt. 29-3 at 19, it appears that exhibit two is the "declaration of Andrew Munro" filed at docket 29-5, which, again, is only sixteen paragraphs. Thus, the fact that respondents "scoured the internet" looking for connections between proposed arbitrators and Fenwick appears entirely unsubstantiated. Given that, the court will credit petitioner's evidence showing the ease with which a Google search would show Aragaki's afiiliation with FSRI. Accordingly, the court finds that respondents had at least constructive knowledge of that affiliation prior to their November 21, 2019 objection to Aragaki's appointment.

In fact, other indicia suggests that respondents had actual knowledge of Aragaki's affiliation with FSRI prior to that date. For starters, the objection came just two days after

1    the panel issued a ruling adverse to respondents.  Compare Dkt. 21-1 ¶ 7 (detailing

2    panel's November 19, 2019 order granting petitioner's emergency motion and directing

3    respondents to surrender petitioner's confidential information to Counsel Munro) with id. ¶

4    8 (detailing respondents' November 21, 2019 contact with AAA that a panel member had

5    a connection with FSRI).

6            Respondents argue that they received the information about Aragaki's affiliation

7    with FSRI as an anonymous "tip" shortly before they reached out to AAA.  Dkt. 29-3 at 9.

8    However, they do not offer any declaration (under penalty of perjury) attesting to that fact.

9    What's worse is that the subject arbitration (including the panel's membership) was

10   confidential.  Under these circumstances, the court finds respondents' "tip" argument

11   highly suspect.  Instead, the court finds it more probable that the evidence proffered (or,

12   perhaps more tellingly, omitted) supports the alternative explanation that respondents

13   previously learned about Aragaki's affiliation with FSRI but kept that information in

14   reserve to for future use should the panel render a decision that was unfavorable to

15   respondents.  Either way, the court holds that respondents were on notice of Aragaki's

16   affiliation with FSRI but failed to timely object to his appointment and, thus, waived their

17   right to challenge the Final Award on the basis of his affiliation with FSRI.  This holding

18   alone justifies denying respondents' vacatur request under § 10(a)(2).   Monster Energy

19   Co., 940 F.3d at 1134 ("In [Fidelity], we joined several of our sister circuits that utilize a

20   constructive knowledge standard when considering whether a party has waived an

21   evident partiality claim.").

22            But even on the merits, the court concludes that respondents are not entitled to

23   vacatur under § 10(a)(2) for at least three separate reasons.  First, respondents' theory of

24   Aragaki's purported bias rests on an attenuated relationship between him and petitioner.

25   According to respondents, a reasonable litigant would view Aragaki as biased because

26   (1) he sits on the board of FSRI, which (2) receives funding and pro bono support from

27   Fenwick, which (3) wants to generate goodwill with its client, petitioner.  That theory adds

28   a connection (FSRI to Fenwick) not contemplated by the court in Monster Energy when it

United States District Court
Northern District of California

United States District Court
Northern District of California

1    held that an arbitrator must disclose his or her interest in a third-party entity doing

2    business with a litigant.

3            Second, petitioner submitted evidence showing that, on October 19, 2018, Cooley

4    LLP ("Cooley") substituted for Fenwick as petitioner's counsel of record, i.e., six months

5    *before* Aragaki's appointment. Compare Dkt. 21-5 (October 19, 2018 letter from Cooley

6    to AAA noting substitution) with Dkt. 21-7 (May 14, 2019 letter from AAA noting Aragaki's

7    appointment). Thus, Aragaki did not preside over the arbitration at any point during

8    Fenwick's representation. That timing renders Aragaki's relationship with FSRI irrelevant:

9    Aragaki could not give a reasonable impression of bias when, in fact, the lawyers he

10   purportedly sought to curry favor with (Fenwick) no longer served as petitioner's counsel.

11   Absent that relationship, respondents' theory lacks any connection that would cause a

12   reasonable person to link Aragaki's interest to that of petitioner.[2]

13           Third, respondents fail to explain or otherwise show how or why Aragaki maintains

14   a "substantial" interest in FSRI. At best, respondents suggest that such interest exists by

15   virtue of FSRI's supposed role in "arranging" for the World Bank to hire Aragaki to provide

16   mediation training abroad in Liberia. Dkt. 19 ¶ 13 (6:24-7:2; 8:6-9).

17           But Aragaki refutes that suggestion in his supplemental disclosure. The World

18   Bank did not hire Aragaki. It hired FSRI. Dkt. 21-9 ("After Mr. Schacter severed his ties

19   with Fenwick, *Loyola Law School and FSRI were retained by the World Bank Group*

20   to help train mediators for a court-connected mediation program at the Commercial Court

21   in Monrovia, Liberia.") (emphasis added).

22           In their supplemental response, respondents failed to proffer any evidence

23   contesting this showing. Instead, they summarily assert that Aragaki's supplemental

24   disclosure "ignores[] the fact that as a result of Aragaki's position with FSRI, he was able

25   to get a World Bank Group contract for Loyola Law School, which also paid for several of

26

27   _____
     [2] Respondents' theory of Aragaki's bias toward Fenwick cuts against the conclusion that
     he would have an interest in ruling in petitioner's favor. Why? Because, under that
28   theory, Aragaki would want petitioner to replace Cooley with Fenwick. So, if anything,
     Aragaki would be incentivized to rule against petitioner during Cooley's representation.

1   his trips to India . . ."  Dkt. 29-3 at 11.  That assertion is insufficient to show the requisite

2   substantial interest.

3     For the above reasons, the court rejects respondents' argument that vacatur is

4   proper under Title 9 U.S.C. § 10(a)(2)'s reasonable impression of bias standard.

5   **b.**  **Actual Bias**

6     A district court may vacate an arbitration award on grounds of actual bias only if a

7   moving party establishes "specific facts" that "indicate improper motives."  Woods v.

8   Saturn Distribution Corp., 78 F.3d 424, 427 (9th Cir. 1996).  In an unpublished decision,

9   the Ninth Circuit has suggested that such a motive requires action by an arbitrator that

10  qualifies as "affirmative misconduct" or plain "irrationality."  Ruhe v. Masimo Corp., 640 F.

11  App'x 685, 686 (9th Cir. 2016).

12    Respondents advance two theories of actual prejudice.  The court analyzes each

13  theory in turn.

14    As their first theory, respondents assert that Aragaki sought to serve petitioner's

15  interest by "skewing" the arbitration in its favor and "orchestrating" the dismissal of

16  respondents' claims on non-substantive grounds. Dkt. 19 ¶ 13 (8:19-20); Dkt. 29-3 at 5.

17  To substantiate that assertion, respondents primarily rely on the following procedural

18  events in the arbitration:

19    (1) The panel's decision to sua sponte raise the issue of which remedies

20      respondents would be entitled to in the event they prevailed on the claims

21      brought in the arbitration.  Dkt. 19 ¶ 13 (8:20-27); Dkt. 29-3 at 12, 18.

22    (2) The panel's instruction that the parties' brief whether it should order

23      respondents to place money in escrow pending the adjudication of respondents

24      claims.  Dkt. 19 ¶ 13 (9:2-6); Dkt. 29-3 at 13.

25    (3) The panel's instruction that the parties' brief whether it should dismiss

26      respondents claims if they were unable to fund the escrow.  Dkt. 29-3 at 14-15.

27    The above course of events does not establish that Aragaki (or the panel more

28  generally) acted with any improper motive when presiding over the arbitration.  Two

United States District Court<br>Northern District of California

reasons support this conclusion.

First, the panel's decision to raise the remedies issue was appropriate under the circumstances. In the arbitration, respondents sought both rescission of the settlement agreements **and** damages. Dkt. 2-4 ¶ 23(b). On January 30, 2020, the panel identified that position as an unaddressed issue and stated its belief that "there is benefit to dealing with [that issue] head-on." Id. ¶ 23(a). The panel then explained that the "problem" with respondents' request is that it:

> Appears to be something of a Catch-22: If they unwind the allegedly fraudulent sale of securities pursuant to the CA and SAA, there would appear to be no affirmative fraud claim left on which to sue for damages. If they do not and the Release remains intact, the Release would appear to bar their affirmative claims because those claims existed at the same time as the Release was entered. Id. ¶ 23(c)

The court holds that the panel's stated rationale shows that, by raising the remedies issue, the panel simply intended to get in front of an antecedent (and potentially dispositive) question in the arbitration. Given that holding, the court rejects respondents' argument that the sua sponte instruction shows any improper motive.

Second, the panel reasonably required respondents to escrow $1.8 million pending the adjudication of their claims. The panel noted that respondents had previously declared that they "own[ed] no assets that could be placed in escrow or that could serve as security for a bond." Dkt. 2-4 ¶ 62(b). The panel found that:

> [I]n light of [respondents'] financial condition, [petitioner] will face **substantial prejudice** if it were to prevail in this arbitration and yet be unable to recoup the attorneys' fees, costs, and expenses to which it would be entitled under the CA and SAA. Id. ¶ 62(d) (emphasis added).

Relying on both California Civil Code § 1693 and the panel's inherent authority to require pre-hearing security, Dkt. 2-4 ¶ 60, 61, the panel then ordered respondents to escrow the $1.8 million within 60 days of its order, id. ¶ 62.

The court holds that the panel's stated finding of potential prejudice to petitioner serves as a reasonable, substantiated basis to require respondents to escrow the $1.8 million. The court further holds that this finding serves as the most plausible explanation

1   for that requirement.  Given these holdings, the court rejects respondents' argument that

2   that requirement shows any improper motive.  In light of the above, the court concludes

3   that respondents' first theory of actual prejudice lacks merit.

4   Respondents' second theory of actual prejudice is unclear.  From what the court

5   can tell, it appears that respondents argue that, despite its substitution, Fenwick "had a

6   great deal at stake" in the arbitration because it represented petitioner in its 2018 initial

7   public offering ("IPO").  Dkt. 29-3 at 17-18.  According to respondents, that representation

8   matters because, in its S-1 IPO filings, petitioner stated that the subject claims "lack

9   merit."  Id. at 18.  Thus, respondents' theory seems to go, "[b]y orchestrating the

10  dismissal of respondents' claims[,] [Aragaki] protected [Fenwick] and its very important

11  client, " namely, petitioner.  Id.

12  This theory fails to show that the panel acted with any improper motive when

13  presiding over the arbitration.  The court reiterates that, under the circumstances at hand,

14  the most plausible explanation for the panel's decision to dismiss respondents' claims is

15  that they were unable to escrow the amount that the panel determined would be

16  necessary to avoid potential prejudice to petitioner.  The panel made that determination

17  reasonably and within its discretion.  Accordingly, the court finds that respondents'

18  second theory of actual bias similarly lacks merit.

19  For the above reasons, the court rejects respondents' argument that vacatur is

20  proper under Title 9 U.S.C. § 10(a)(2)'s actual bias condition.  Accordingly, the court

21  holds that respondents failed to show that they are entitled to vacatur under that section.

22  **2.      The Panel Did Not Improperly Refuse to Hear Evidence**

23  When construing Title 9 U.S.C. § 10(a)(3), the Ninth Circuit has explained that

24  [a]rbitrators enjoy wide discretion to require the exchange of evidence, and to admit or

25  exclude evidence, how and when they see fit."  U.S. Life Ins. Co. v. Superior Nat. Ins.

26  Co., 591 F.3d 1167, 1175 (9th Cir. 2010).  Courts in this district have observed that "[t]o

27  meet the standard for vacating the award, the arbitrator's refusal to hear evidence must

28  demonstrate bad faith or be so gross as to amount to affirmative misconduct."  Immersion

1    *Corp. v. Sony Computer Ent. Am. LLC*, 188 F. Supp. 3d 960, 974 (N.D. Cal. 2016).

2          In this case, respondents assert that the panel failed to adequately consider two

3    sorts of related evidence.  The court analyzes each challenge in turn.

4          As its first ground, respondents assert that the panel failed to make a "legitimate

5    attempt" at valuing the so-called "restorable consideration" that petitioner would owe

6    them in the event the CA were rescinded.  Dkt. 19 ¶ 13 (9:17-26); Dkt. 29-3 at 14-15, 18.

7    Respondents say that that failure matters because such consideration included a claim

8    worth up to $139 million against petitioner (and other parties).  Dkt. 29-3 at 15.

9          The court holds that this challenge does not support vacating the Final Award.

10   First, the panel did not ignore respondents' argument concerning the value of their pre-

11   CA claims.  To the contrary, it explained that it need not value those claims when

12   determining the consideration that petitioner would owe respondents in the event of

13   rescission because they had not been filed and remained unadjudicated. Dkt. 2-4 ¶ 50

14   ("Prior to the alleged fraud, [respondents] had not yet even filed their pre-CA claims; thus,

15   an adjudication of liability and damages on those claims . . . is not necessary to a

16   'judgment' that returns Claimants to the status quo ante.")

17         Second, the court finds the panel's explanation for that decision is reasonable.

18   Respondents do not contest that their pre-settlement claims had not yet been

19   adjudicated.  Thus, if judgment were granted in respondents' favor, they would be

20   restored with only some unadjudicated causes of action.  Respondents would still need to

21   litigate those claims to monetary judgment.  Whether or not such litigation would yield

22   anything for respondents (other than additional attorney's fees) is an open question.

23         Third, even if the panel were required to "value" respondents' pre-CA claims, the

24   panel's decision to effectively assign a zero-dollar value to them is not unreasonable.

25   There had been no liability determination on those unadjudicated claims.  There had

26   been no affirmative defense determination on such claims.  There had been no damages

27   determination on such claims.  Accordingly, any valuation of the subject claims would

28   prove speculative, thus supporting even a zero-dollar valuation.

United States District Court
Northern District of California

Fourth, the court holds that, even if the panel's consideration of the evidence relating to respondents' restorable consideration were deficient, that deficiency does not rise to the level of bad faith or gross dereliction. Immersion Corp., 188 F. Supp. 3d at 974. It certainly would not justify vacatur. Bosack, 586 F.3d at 1102 ("Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard.").

As its second ground, respondents similarly argue that the panel failed to adequately consider the value of their pre-settlement claims against various Bloom directors and officers (the "Bloom D&Os"). Dkt. 29-3 at 14-16.[3] Respondents argue that by "ignoring" those claims, the panel "effectively ruled" that they had "no value." Dkt. 29 at 16.

Again, the court rejects this argument. First, respondents fail to show that the panel was obligated (in the first instance) to take evidence on the value of their claims against the Bloom D&Os. Respondents fail to establish that the Bloom D&Os were even parties to the arbitration. Moreover, from what the court can tell, the only other non-Bloom persons sued in the arbitration were venture capital firms. Dkt. 2-4 ¶ 51-52.

Second, respondents fail to proffer any authority showing that the panel was required to consider the value of the claims against any ***non-***Bloom party when valuing the net restorable consideration ***owed to petitioner***.

Third, and in any event, the court finds that respondents' challenge to the panel's treatment of the value of any claims against any non-Bloom party fails for the same reasons noted above with respect to such valuation for any unadjudicated claim against petitioner.

In light of the above, the court holds that respondents failed to show that they are entitled to vacatur under Title 9 U.S.C. § 10(a)(3).

/ / /

---

[3] One such director includes former Secretary of State and retired four-star Army General Colin Powell. Dkt. 29-3 at 14.

United States District Court
Northern District of California

1
2

### 3. Respondents Failed to Show that the Final Award Was Procured by Fraud, Corruption, or Other Undue Means

3
4
5
6
7
8

To justify vacatur under Title 9 U.S.C. § 10(a)(1), a challenging litigant must show that the subject fraud satisfies the following three requirements: (1) the fraud was "not discoverable upon the exercise of due diligence prior to the arbitration"; (2) the fraud was "materially related to an issue in the arbitration"; and (3) the fraud is established "by clear and convincing evidence." Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp., 791 F.2d 1334, 1339 (9th Cir. 1986).

9
10
11

In this case, respondents assert that Aragaki "clearly received significant personal benefits," including "FSRI's obtaining a World Bank contract for Aragaki . . ." Dkt. 19 ¶ 13 (8:6-9). They do not elaborate on this argument.

12
13

The court concludes that respondents failed to show that the Final Award was procured by unlawful means. Four reasons support this conclusion.

14
15
16

First, and as an initial matter, it appears that respondents have waived their position on this issue. In their supplemental response, respondents fail to address any of the arguments about the inapplicability of this section that petitioner raised in its reply.

17
18

Second, respondents do not make any attempt to define the purported fraud or corruption.

19
20
21

Third, to the extent respondents base such corruption on their suggestion that Aragaki engaged in a quid pro quo, they do not proffer any evidence showing that Aragaki, in fact, received any "personal benefit" from petitioner, FSRI, or Fenwick.

22
23
24

Fourth, as decided in Section I.B.1.a., respondents fail to show how they could not discover Aragaki's "affiliation" with FSRI (and FSRI's corresponding relationship with Fenwick) following their exercise of due diligence prior to Aragaki's appointment.

25
26

For the above reasons, the court holds that respondents failed to show that they are entitled to vacatur under Title 9 U.S.C. § 10(a)(1).

27

\*      \*      \*

28

The court concludes that respondents failed to show that the court should vacate

1   the Final Award.  Accordingly, the court grants the petition, Dkt. 1, and confirms the Final

2   Award, Dkt. 2-4.  Hall St. Assocs., L.L.C., 552 U.S. at 582 ("Under the terms of § 9, a

3   court "must" confirm an arbitration award "unless" it is vacated, modified, or corrected "as

4   prescribed" in §§ 10 and 11.").  Accordingly, the court will enter a separate judgment

5   dismissing respondents' claims with prejudice and awarding petitioner's attorney's fees.

6   **II.    Motions to Seal**

7           "There is a general principle in favor of public access to federal court records."

8   Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978).  "The proponent of sealing

9   bears the burden with respect to sealing.  A failure to meet that burden means that the

10  default posture of public access prevails."  Kamakana v. City & City of Honolulu, 447 F.3d

11  1172, 1182 (9th Cir. 2006).

12          The Ninth Circuit has recognized that two different standards may apply when a

13  request to seal a document is made in connection with a motion—namely the "compelling

14  reasons" standard or the "good cause" standard.  Center For Auto Safety v. Chrysler

15  Grp., LLC, 809 F.3d 1092, 1096-97 (9th Cir. 2016).  The compelling reasons standard

16  applies to any sealing request made in connection with a motion that is "more than

17  tangentially related to the merits of a case."  Id. at 1099, 1101.

18          Under the good cause standard, a party requesting sealing must show that, for

19  "each particular document" it seeks to seal, "specific prejudice or harm will result if no

20  protective order is granted."  Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130

21  (9th Cir. 2003).  Under the compelling reasons standard, a court may seal a record only if

22  it finds a "compelling reason" to support such treatment and articulates "the factual basis

23  for its ruling, without relying on hypothesis or conjecture."  Center For Auto Safety v.

24  Chrysler Grp., LLC, 809 F.3d at 1096-97.

25          If the court makes such finding, it "must then conscientiously balance the

26  competing interests of the public and the party who seeks to keep certain judicial records

27  secret."  Id. at 1097.  Factors relevant to that balancing test include the public interest "in

28  understanding the judicial process," Pintos v. Pac. Creditors Ass'n, 605 F.3d 665, 679 n.6

United States District Court
Northern District of California

1   (9th Cir. 2010), as well as the volume of material sought to be sealed, <u>Algarin v.</u>

2   <u>Maybelline, LLC</u>, 2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014).

3       The Ninth Circuit has acknowledged that "[w]hat constitutes a 'compelling reason'

4   is best left to the sound discretion of the trial court." <u>Center for Auto Safety</u>, 809 F.3d at

5   1097. "Examples include when a court record might be used to gratify private spite or

6   promote public scandal, to circulate 'libelous' statements, or 'as sources of business

7   information that might harm a litigant's competitive standing.'" <u>Id.</u>

8       In this case, petitioner filed two requests to seal various documents filed in

9   connection with the petition and counter motion. Dkt. 2 (petitioner's motion to seal Final

10  Award filed in support of petition); Dkt. 34 (petitioner's declaration in support of

11  respondents' administrative motion (Dkt. 29) to seal supplemental response filings).

12  Respondents do not oppose either request. The court considers each request in turn.

13      **A.    Motion to Seal the Final Award**

14      In its motion to seal, petitioner seeks to seal all portions of the Final Award except

15  its caption page, introduction, and conclusion. Dkt. 2. The portions sought for sealing

16  comprise 108 paragraphs. Dkt. 2-4. They detail the procedural and substantive

17  background of the parties' dispute, <u>id.</u> ¶¶ 1-25, a statement and analysis of the remedies

18  and escrow issues, <u>id.</u> ¶¶ 26-70, and an analysis of whether to award petitioner its

19  attorney's fees and costs, <u>id.</u> ¶¶ 71-108.

20      In its motion, petitioner asserts that the good cause standard controls its request.

21  Dkt. 2 at 2. Petitioner reasons that that standard controls because the 108 paragraphs it

22  seeks to seal "are only tangentially related to the merits of this action." <u>Id.</u>

23      Petitioner asserts that its request satisfies the good-cause standard because

24  "public disclosure of the entire Final Award . . . threatens substantial prejudice" to

25  petitioner. <u>Id.</u> at 3. To substantiate that assertion, petitioner explains that, when

26  agreeing to the SA and CAA, it "specifically bargained" that its dispute with respondents

27  would remain confidential. <u>Id.</u> Thus, petitioner reasons, disclosure would "deprive" it of

28  the "benefit of its bargain." <u>Id.</u>

United States District Court
Northern District of California

Petitioner later adds that compelling reasons also support sealing the Final Award. Id. at 3. Petitioner says that its disclosure would be "particularly unjust" because respondents "have not yet paid" the Final Award. Id. Thus, petitioner reasons, respondents should not be permitted to simultaneously "flout" that award and "force" the disclosure of that award. Id.

The court denies petitioner's request to seal the Final Award. First, petitioner misapprehends the relevant inquiry for determining whether the good cause or compelling reasons standard applies. The key question for determining the applicable standard is whether the sealing request is made in connection with a motion (or other pleading) that is more than tangentially related to the merits of an action. Ctr. for Auto Safety, 809 F.3d at 1099, 1101 ("The focus in all of our cases is on whether *the motion* at issue is more than tangentially related to the underlying cause of action. . . . Rather, public access will turn on whether *the motion* is more than tangentially related to the merits of a case. . . . Our precedent, which always has focused on whether *the pleading* is more than tangentially related to the merits, recognizes this essential point.") (emphasis added). Petitioner's position, however, mistakenly focuses on whether the portions of the *subject document* sought for sealing is more than tangentially related to merits of an action. Dkt. 2 at 2.

The court understands that a lone remark in Kamakana somewhat explains petitioner's mistaken legal position. Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1179 (9th Cir. 2006) ("The public has less of a need for access to court records attached only to non-dispositive motions because *those documents* are often "'unrelated, or only tangentially related, to the underlying cause of action.'") (emphasis added). The panel in Center for Auto Safety, however, interpreted and clarified Kamakana when articulating the above rule. 809 F.3d at 1099 (citing four authorities, including Kamakana, 447 F.3d at 1179). In any event, other recent Ninth Circuit authority has reiterated that the panel's decision in Center for Auto Safety provides the operative test in this circuit for determining whether the good cause or compelling reasons standard applies to a sealing

1   request. United States v. Sleugh, 896 F.3d 1007, 1014 (9th Cir. 2018) ("We observed

2   how 'the focus in all of our cases is on whether the motion at issue is more than

3   tangentially related to the underlying cause of action.'") (citing Center for Auto Safety, 809

4   F.3d at 1099).

5       Second, with the above clarification in mind, the court finds that the compelling

6   reasons standard applies. The obvious point of the petition is to confirm the Final Award.

7   That award disposes of respondents' claims. Petitioner cannot reasonably argue that a

8   pleading requesting the court's imprimatur of such disposition is less than tangentially

9   related to the merits of the action.[4]

10      Third, with that finding in hand, the court holds that none of the reasons identified

11  by petitioner in support of its motion satisfy the compelling reasons standard. The fact

12  that the parties privately bargained to keep a proceeding confidential does not nullify the

13  requirement that a party proffer a qualifying reason to justify sealing that document *when*

14  *put at issue in a public forum*. If the court accepted petitioner's position that the mere

15  existence of such a "bargain" (and whatever its unspecified "benefits" to petitioner)

16  provides the necessary justification, then the parties in any litigation could circumvent the

17  right of public access through private agreement. That outcome is untenable.

18      Petitioner also fails to proffer any binding authority finding a compelling reason to

19  seal an arbitration award simply because a party has refused to pay that award. The

20  record does not show that respondents intend to "flout" any confidentiality obligation.

21  Respondents did not even file an opposition to the petitioner's motion to seal the Final

22  Award. In fact, based on respondents' administrative motion to seal its supplemental

23  response filings (more on that below), it appears that respondents may actually agree

24  that the court should seal the Final Award. Dkt. 29 at 1 ("Respondent agrees [sic] with

25  the legal arguments made by petitioner in its Administrator [sic] Motion to File Under Seal

26

27  _____

    [4] Even if the remark in Kamakana controlled (it does not), the compelling reasons
28  standard would still apply. Given its disposition of respondents' claims, the Final Award
    (itself) is also more than tangentially related to the merits of an action.

and incorporates them into this motion.").

Fourth, petitioner does not make any attempt to narrowly tailor its sealing requests to only those (even arguably) protectable portions of the Final Award.  Oregonian Pub. Co. v. U.S. Dist. Ct. for Dist. of Oregon, 920 F.2d 1462, 1465 (9th Cir. 1990) ("Under the first amendment, the press and the public have a presumed right of access to court proceedings and documents. . . . This presumed right can be overcome only by an overriding right or interest 'based on findings that closure is essential to preserve higher values ***and is narrowly tailored to serve that interest*.'") (emphasis added); See also Civ. L.R. 79-5(b) ("The request must be narrowly tailored to seek sealing only of sealable material . . .").

For example, petitioner seeks to seal mere statements of the law recited by the panel in the Final Award.  See, e.g., Dkt. 2-4 ¶ 41(a)-(b).  Other low-hanging fruit include provisions in the Final Award that are ***identical*** to those alleged by petitioner in its publicly filed petition.  Compare Dkt. 1 ¶ 7 (detailing CA arbitration provision) with Dkt. 2-4 ¶ 3 (same).  Petitioner's failure to comply with the narrowly tailored requirement provide an independent ground for denying its motion to seal the Final Award.

Fifth, and finally, petitioner does not make any attempt to show that its private interest in sealing the Final Award outweigh any competing public interest in accessing that document.  Center For Auto Safety, 809 F.3d at 1097.  That failure provides another independent ground to deny this motion.

**B.    Request to Seal the Supplemental Response Filings**

In support of their supplemental response, respondents filed 20 "exhibits" under seal.  Dkt. 29-4, Dkts. 29-6 – 29-24.  These exhibits comprise panel orders, party briefs, and other miscellaneous documents.  In addition to these exhibits, respondents also filed under seal their supplemental response (Dkt. 29-3), Counsel Munro's declarations (Dkts. 29-1 and 29-5), their administrative motion to seal (Dkt. 29), and that motion's proposed

United States District Court
Northern District of California

order (Dkt. 29-2).[5]

In a declaration submitted by its counsel, petitioner asks that the court maintain under seal 14 of these documents.  Dkt. 34 ¶ 7.  Those documents include the following:

- Counsel Munro's declaration in support of the supplemental response.  Dkt. 29-5.

- The panel's January 20, 2020 Order No. 8.  Dkt. 29-4.

- Respondents' objections to Aragaki's supplemental disclosure. Dkt. 29-6.

- Respondents' motion for emergency relief.  Dkt. 29-8.

- The panel's November 19, 2019 Order No. 7.  Dkt. 29-15.

- Aragaki's invoices for the arbitration.  Dkt. 29-16.

- The panel's January 30, 2020 tentative ruling.  Dkt. 29-17.

- Petitioner's February 24, 2020 brief.  Dkt. 29-18.

- Respondents' April 19, 2020 brief.  Dkt. 29-19.

- The panel's March 24, 2020 Order No. 11.  Dkt. 29-20.

- Respondents' April 19, 2020 brief.  Dkt. 29-21.

- The panel's May 15, 2020 Order No. 12.  Dkt. 29-22.

- The declaration of petitioner's counsel, John Dwyer.  Dkt. 29-23.

- The panel's June 22, 2020 Order No. 13.  Dkt. 29-24.

To support its request to seal these filings bulleted above, petitioner proffers the same reasons that it advanced to support its request to seal the Final Award.  Dkt. 34 ¶¶ 6-7.  In relevant part, petitioner adds that the court should seal docket 29-5 because it "identifies" certain non-parties who entered a confidential settlement with respondent, as well as some "confidential information about them," Dkt. 34 ¶ 8 (citing Dkt. 29-5 ¶ 8).

As an initial matter, the court does not cite and need not refer to the latter 13

---

[5] The court notes that respondents were not particularly careful in assembling and labeling the documents in this filing.  As petitioner helpfully clarifies, respondents filed two exhibits that maintain an identical counterpart.  Compare Dkt. 29-12 (Loyola Law School article) with Dkt. 29-14 (same); Compare Dkt. 29-19 (exhibit 18) (respondents' April 19, 2020 arbitration brief) with Dkt. 29-21 (same).  And despite its listing in an attachment to the supplemental response, a so-called "exhibit 6" detailing petitioner's above-noted S-1 filings was not, in fact, filed.  Dkt. 29-3 at 6.

United States District Court
Northern District of California

1    documents when reaching its decision on the counter motion and petition. Given that,

2    the court does not need to consider whether to seal them. On that basis, the court

3    denies as moot petitioner's request to seal these documents. These 13 documents will

4    remain protected from public view. That leaves only docket 29-5.

5          The court denies petitioner's request to seal that document. First, as explained in

6    Section II.A., petitioner's proffered justifications for sealing the Final Award do not satisfy

7    the compelling reasons standard. Thus, the court finds that those same justifications do

8    not support sealing docket 29-5.

9          The court further finds that petitioner fails to articulate a separate compelling

10   reason counseling against disclosure of the identities of the non-parties referenced in

11   docket 29-5. The court understands petitioner's citation to the court's decision to seal

12   third-party Foxconn's pricing information in Cisco Systems Inc. v. Chung, et. al., 19-cv-

13   7562, Dkt. 179. Petitioner is correct that, when reaching that decision, the court

14   emphasized Foxconn's status as a non-party in that litigation. 19-cv-7562, Dkt. 179 at

15   12.

16         What petitioner omits, however, is that Foxconn itself appeared in that action to

17   protect its information. 19-cv-7562, Dkt. 177. Foxconn also filed a declaration of its

18   employee attesting to the competitive harm that Foxconn would suffer in the event the

19   subject pricing information were disclosed. 19-7562, Dkt. 179 at 11-12. The court then

20   went on to note the existence of a protective order in that litigation that provided some

21   process for third parties when their information was subject to production. Id. at 12. The

22   court further indicated that the record did not show that plaintiff in that action afforded

23   Foxconn that process prior to production. Id. None of these facts are present here.

24         Second, and independent of the above, petitioner again fails to narrowly tailor its

25   sealing request. For example, petitioner seeks to seal the entirety of Counsel Munro's

26   declaration (Dkt. 29-5). Dkt. 34 ¶¶ 7-8. Yet, petitioner overlooks that its supplemental

27   reply extensively refers to or cites that declaration when advancing its argument that

28   respondents waived their right to challenge Aragaki's appointment. Dkt. 33 at 6-7, 9 n.2.

C.     **The Court Denies Petitioner's Request to File a Renewed Motion to Seal the Final Award**

In its motion to seal, petitioner asks that the court permit it to file a "renewed" motion in the event the court denies its first motion to seal the Final Award. Dkt. 2 at 4.

The court will not permit petitioner to file a "renewed" motion to seal the Final Award. As decided in Section II.A., petitioner cannot reasonably argue that its petition (or the Final Award, for that matter) is less than tangentially related to the merits of the arbitration. Indeed, that's likely why, in its motion to seal, petitioner proffered its alternative "compelling reasons," Dkt. 2 at 3, just two paragraphs after claiming that the good cause standard controls, id. at 2.

The court evaluated all of petitioner's proffered reasons in both of its sealing requests. In effect, then, petitioner had not one but two opportunities to satisfy its showing. Petitioner failed. Petitioner does not offer any reason to suggest that a third attempt would yield a different result. But even if it had, as decided above, petitioner neglected any attempt to narrowly tailor the portions of any document sought for sealing. Again, such an attempt is also required by established Ninth Circuit authority as well as this district's Civil Local Rules.

The court has expended ample resources deciding the counter motion and petition. It will not entertain a successive motion to seal simply because a litigant holds back its showing on an initial motion with the expectation that it will get a second shot.

## CONCLUSION

For the above reasons, the court **DENIES** the counter motion to vacate the Final Award, Dkt. 19; Dkt. 29-3, and **GRANTS** the petition, Dkt. 1, to confirm that award, Dkt. 2-4. The court will separately enter judgment in conformity with the Final Award.

The court also **DENIES** petitioner's motion to seal the Final Award, Dkt. 2, as well as its request to seal the above-noted 14 documents filed by respondents in support of their supplemental response, Dkt. 34. Incident to that decision, the court **TERMINATES** respondents' administrative motion to seal (Dkt. 29) all documents filed in support of the

United States District Court
Northern District of California

supplemental response as well the proposed orders (Dkt. 30) filed as part of that motion.

**Within ten days of this order**, petitioner must file on the public docket an unredacted version of the Final Award (Dkt. 2-4).  By that same date, respondents must file on the public docket an unredacted version of Counsel's Munro's declaration in support of the supplemental response (Dkt. 29-5). Given that petitioner does not request that the court seal dockets 29, 29-1 through 29-3, or 29-9 through 29-14, respondents must file those documents on the public docket.  The court will not reconsider its sealing decisions.

**IT IS SO ORDERED.**

Dated: September 8, 2021

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge